HARRIS, Presiding Judge.
Appellant was indicted by the Montgomery County Grand Jury for violating § 32-8-12(4) Code of Alabama 1975. On August 19, 1980, the jury found him guilty as charged. The trial court subsequently sentenced appellant to two years’ imprisonment but suspended all but two months of it. It also assessed appellant a $5,000.00 fine. Throughout the trial and appellate proceedings, appellant has been represented by counsel of his choice.
On appeal, appellant challenges the sufficiency of the State’s evidence contending that it failed to prove any false or fictitious act or any fraudulent intent.
Omitting the formal parts, the indictment alleges that appellant:
“[D]id use a false or fictitious name or address, or make a material false statement, or fail to disclose a security interest, or conceal any other material fact in an application for a certificate of title, to-wit: the said George B. Lucas, alias George Lucas did apply for a certificate of title for a 1977 Mercedes Benz 450 SL automobile, a better description of which is unknown to the Grand Jury, and did give a fictitious bill of sale for the said 1977 Mercedes Benz 450 SL automobile, and/or a fictitious address for himself contrary to the provisions of Section 32-8-12, Code of Alabama, 1975, ...”
On October 12, 1978, appellant filed an application for a certificate of title with the title division of the Alabama Department of Revenue in Montgomery. Appellant was *1071 assisted in making his application by title and lien examiner Marty Shaw.
Ms. Shaw testified that she remembered assisting appellant on October 12. She inspected appellant’s vehicle, a 1977 red Mercedes Benz, verified the VIN, 10704412036022, on the car with that on the bill of sale presented by appellant, checked the number of cylinders, and, afterwards processed the application for title.
Appellant’s bill of sale was a German used car sales contract. An English translation was prepared at the direction of the State. Appellant stipulated that the translation accurately reflected the contents of the original. The translation was properly admitted into evidence.
Ms. Shaw testified that the bill of sale was dated May 3, 1978, and indicated that appellant had purchased the car from Mr. Otto Bendeer. Ms. Shaw testified that the information on the application other than that verified independently by her was obtained either from the bill of sale or from appellant.
Ms. Shaw stated that appellant gave as his address Highway 278, Box 954, Cullman, Alabama. She stated that a certificate of title would not be issued to anyone other than a legal resident of the State. Ms. Shaw testified that a post office box was an unacceptable address because “. . . no one lives in a Post Office Box ... we are required to have a street address.”
Ms. Shaw could not remember if appellant and she discussed the odometer reading of the car. The October 12, 1978, application reflected a reading of 696 miles while the May 3, 1978, bill of sale indicated a reading of 2,936 miles. Ms. Shaw stated that she could have made an error in recording the mileage of the car at the time the application was made.
On cross-examination, Ms. Shaw verified the accuracy of a copy of appellant’s application for title and was certain that her testimony reflected the October 12 conversation although she did not remember every detail of it.
Ms. Shaw could not explain why appellant’s certificate of title was issued on October 6 when the application was made on October 12 other than the possibility that it was pre-dated. However, she testified that a title was never issued prior to an application being made. The trial court admitted appellant’s copy of his certificate of title into evidence.
On December 12, 1978, Ms. Shaw corresponded with Bank of America of California concerning a security interest it held in appellant’s car. The bank had filed an application to record its security interest, dated October 20, 1978, but had failed to sign it, have appellant sign it, and pay the filing fee. The amount of the lien was not determined. On March 2, 1979, a certificate of title was issued to appellant which evidenced the recording of the security interest. The trial court admitted appellant’s copy of the document into evidence. Ms. Shaw was uncertain whether she asked appellant if there was an outstanding loan on the car at the time he made application for title, but stated that in every application she had processed she inquired about any outstanding loan. The application did not indicate any outstanding security interest in the car. On October 12, 1978, Ms. Shaw was unaware of the Bank of America security interest or of any security interest held by a Florida bank. Ms. Shaw testified that appellant told her that he had difficulty reading printed forms. She stated that appellant told her that he “. .. had a home in Miami.”
Mr. Terry Lane testified that he was employed as supervisor of the title division of the Alabama Department of Revenue and custodian of all records kept by the title division. He testified that copies of appellant’s application for certificate of title and bill of sale, and Bank of America’s application to record its security interest and its rejection letter were kept under his care, custody, and in the normal and everyday course of business. The records were properly admitted into evidence. Mr. Lane could not remember whether his office had mailed any documents to appellant in Miami.
*1072 Mr. Robert Podsiadlo testified that he was an automobile leasing agent for Chris Leasing Company in Decatur, Georgia. At the direction of his general manager, Mr. Podsiadlo was entrusted with certain records concerning appellant’s Mercedes and authorized to bring them to court at the request of the State.
Mr. Podsiadlo produced a bill of sale between Chris Leasing and a Jacksonville, Florida, car dealership indicating that Chris leasing had purchased the Mercedes on April 13, 1977. He also produced a bill of sale between Chris Leasing and appellant indicating that appellant had bought the Mercedes from it on July 10, 1978. In addition, an odometer mileage statement, dated July 12, 1978, certified the car’s mileage to be 4,268 miles. The records were kept by Chris Leasing in its ordinary course of business. They were properly admitted into evidence.
During its ownership of the car, Chris Leasing Company leased the car to Mr. Roland A. Norton, president of Deep South Auto Body, Inc., in Perrine, Florida. The terms of the lease ran from April 5,1977, to April 5, 1981. However, Mr. Podsiadlo testified that, from April, 1977, to July, 1978, Chris Leasing Company owned the car. The car was titled in Florida. The lease was admitted into evidence.
On cross-examination, Mr. Podsiadlo testified that Mr. Norton would have had possession of the Mercedes in May, 1978, and knew that he possessed it for the first five months in 1978. He stated that none of their lessees had the right to assign his interest in the rental lease to another. His office had no records of any assignment of the rental lease of Mr. Norton to Otto Ben-deer.
Mr. Harlin Moore, assistant bureau chief of the Bureau of Title and Services in the Division of Motor Vehicles of the Florida Department of Highway Safety, testified that he was custodian of records pertaining to vehicles titled in Florida. Mr. Moore identified a series of records pertaining to appellant’s Mercedes.
Mr. Moore testified that, on September 1, 1977, the Mercedes was first titled by Chris Leasing. The records reflect that title remained in Chris Leasing until July 10,1978, when the car was sold to appellant. Appellant was then issued a certificate of title on September 26, 1978. His title reflects a Miami address and a security interest with Sun Bank of Miami. The loan was dated July 10, 1978, and stamped paid on November 8, 1978.
Mr. Moore had no records of appellant purchasing the car from Otto Bendeer or any rental agreement between Chris Leasing and Roland Norton. The records from which Mr. Moore testified were properly introduced into evidence.
A stipulation of facts was entered by appellant when he agreed that the testimony of Mr. Carlos Gobel of Sun Bank of Miami would reveal the following: That appellant thrice borrowed money from the bank using the Mercedes as collateral; that the dates of the loans and their satisfaction were July 10, 1978, and October 31, 1978; November 17, 1978, May 1, 1979; April 29, 1979, and December 12, 1979, respectively; that appellant paid each loan; and that the bank records did not reflect any loan using the car as collateral from Bank of America. The bank records supporting the stipulation were admitted into evidence.
Alabama Bureau of Investigation Investigator B. A. Richardson testified that he was involved in the investigation of appellant. Investigator Richardson went to Cullman to determine whether appellant’s address as listed on his application for and certificate of title existed. He found Highway 278, but no residence with box number 954. Investigator Richardson discovered a Cullman Post Office Box 954 registered to appellant. He did not check any county records to determine whether appellant owned property in Cullman County. Investigator Richardson’s testimony concluded the presentation of the State’s evidence.
Appellant did not take the witness stand or present any evidence to contradict that of the State’s witnesses.
*1073 Taken in its most favorable light, the State’s evidence established that: (1) When appellant applied for a certificate of title for the Mercedes on October 12, 1978, he produced a bill of sale dated May 3, 1978, although he did not purchase the car from Chris Leasing until July 10, 1978; (2) Chris Leasing initially bought the car on April 13, 1977, had it titled in Florida, and retained ownership until it sold the car to appellant; (3) On July 10, 1978, appellant had borrowed money from Sun Bank of Miami, using the car as collateral; (4) Sun Bank held a security interest in the car until the loan was paid in full on October 31, 1978, nineteen days after appellant had made application for title in Alabama; (5) On his title application appellant gave as his resident address Highway 278, Box 954, Cull-man, when no such address existed; (6) No evidence of appellant’s resident address as of October 12, 1978, was introduced; (7) On October 12, 1978, the title division was unaware of appellant’s current Florida title, issued September 26, 1978, and the outstanding security interest in his car.
Statutes relating to certificates of title to motor vehicles are generally enacted, inter alia, for the protection of the owners of the motor vehicles, of those holding liens thereon, of innocent purchasers for value, and of the general public. They are enacted to provide more accuracy in, and security of, titles to motor vehicles, as between parties dealing therein, to protect the owners of motor vehicles and those holding liens thereon against fraud, and to prevent thefts and traffic in stolen motor vehicles. 60 C.J.S. Motor Vehicles § 42(1) (1969).
Alabama is one of ten states to have adopted the Uniform Motor Vehicle Certificate of Title and Anti-Theft Act. 11 U.L.A. 106 (Supp.1981). However, our search of those jurisdictions has not revealed a case in point with the instant case.
A careful review of the uncontra-dicted evidence of the State leads us to the inescapable conclusion that it clearly established a prima facie violation of Section 32-8-12(4). Fraudulent intent is a question of fact to be resolved by the jury. Stokes v. State, Ala.Cr.App., 373 So.2d 1211, cert. denied, Ala., 373 So.2d 1218. The trial court properly submitted the case to the jury for its consideration. We find no error in its ruling denying appellant’s motion to exclude.
We have carefully searched the record for errors injurious to the substantial rights of the appellant and have found none. The judgment of conviction is hereby due to be affirmed.
AFFIRMED.
All the Judges concur, except BOOK-OUT, J., who concurs in the result.